SHERMAN HOLDING REALTY CORP., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. WILLIAM J. McGANN, TAX ASSESSOR OF THE CITY OF ELIZABETH, AND THE CITY OF ELIZABETH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division—Union County

Decided October 23, 1963.

*Mr. David Pliskin* argued the cause for plaintiff (*Messrs. Jacobson & Winter,* attorneys; *Mr. Sam Weiss* on the brief).

*Mr. Raymond A. Leahy,* Assistant City Attorney, for defendants.

FELLER, J. S. C. This is an action in lieu of prerogative writs wherein plaintiff Sherman Holding Realty Corp. challenges the validity of a special assessment levied by defendant William J. McGann, tax assessor, and the City of Elizabeth.

Plaintiff is the owner of property having a 200-foot frontage on Sherman Avenue in Elizabeth. Prior to July 1961 the city contracted for the improvement of Sherman Avenue, the total contract price being $27,540.97. On or about May 8, 1962, pursuant to notice, the Elizabeth City Council confirmed an assessment of $3,093.80 made against plaintiff's property. The assessment was made on a front-foot basis. The total front footage on Sherman Avenue was 1,780.40 lineal feet, which included 924.81 feet fronting Wilson Park, a public park owned by the city. This figure was divided into $27,540.97, thus arriving at a front foot assessment of $15.469. Plaintiff having a 200-foot frontage, was assessed $3,093.80. The city also assessed five other property owners fronting Sherman Avenue, as well as itself, in the sum of $14,699.59 for the park frontage.

After assessing these properties, the city, pursuant to *R. S.* 27:15–1 *et seq.,* received State Aid in the sum of $19,120.30 to help defray the cost of this improvement and another. Out of this fund $12,342.65 was applied by the city to reduce the assessments levied against the park property on Sherman Avenue. The remaining $6,777.65 has been used to improve Merritt Avenue, from Delaware Street to Erie Street.

It is plaintiff's contention that the assessment upon its property should not have been made at all, or, in the alternative, if the assessment was proper, it should have been reduced by the State Aid; that plaintiff should be given a reduction in the assessment equal to the "per feet" ratio of its property

to the State Aid received. Defendants contend that *R. S.* 27:15–1 *et seq.* does not provide that a property owner should in any way benefit by the State Aid.

## I.

*R. S.* 27:15–1 to 20 provides for State Aid to municipalities "for the construction, reconstruction, grading, drainage, maintenance, lighting or repair of municipal roads, or any other purpose permitted by this chapter." *N. J. S. A.* 27:15–1(C). The act contemplates specification of what projects are to be undertaken and approval of such projects by the State Highway Commissioner before they are begun. *N. J. S. A.* 27:15–1.7. It follows from this that the municipality cannot disburse the State Aid to any project considered necessary, or to a general road fund. Furthermore, under *N. J. S. A.* 27:15–1.8, if disbursement is made to a municipality in any year and the funds are not expended for the purposes set out by the act, or no obligations have been incurred by the municipality against such Aid, then the State Highway Commissioner shall deduct an amount equal to the unexpended sum, or the sum not required to meet obligations contemplated by the act, from the amount allocated to that municipality for the year following the disbursement. The deduction is reserved to the credit of the municipality for a period of three years. If it remains unused at the expiration of such three-year period, the credit lapses and becomes part of the motor vehicle revenues in the General State Fund. *N. J. S. A.* 27:15–1.12. Nowhere in the act is there specific reference to what effect such State Aid shall have upon assessments made upon property owners abutting the municipal road to be improved.

The first question to be determined is: What figure should be used in determining the reduction to adjacent property owners, assuming they are entitled to a credit because of the State Aid? Plaintiff contends the full amount donated ($19,120.30) should go toward reducing the assessments of

the property owners. Defendant, on the other hand, contends that the sum of $6,777.65 was properly applied to the improvement on Merritt Street; that plaintiff in no instance should benefit from this sum, and that if the court should hold for plaintiff, it should only be for a proportionate amount of $12,342.65—the amount devoted to the Sherman Avenue improvement.

It seems that the two streets involved were in one project, and the State paid for both projects in the amount of $19,120.30. There is no indication that the State Highway Commissioner broke down the sum disbursed between the two streets. In lieu of any breakdown, it must be found that the city is free to apply the funds according to its own plans, provided they are applied to the project for which they were requested, and provided further that they are not applied to more than 90% of the total cost of any one job. The latter proviso is made necessary by *N. J. S. A.* 27:15–1.10.

Since the funds were properly allocated, there is no ground for plaintiff's contention that the $6,777.65 applied to the Merritt Avenue improvement should be used to reduce the assessment. There seems to be no basis for the plaintiff's contention that it should benefit by this sum. In view of what has been said above, this Court also finds that there is also no basis for plaintiff's contention that the $6,777.65 was diverted to a general road fund. The grant was requested and received for the purpose of improving Merritt Avenue, and it was so used.

*In Paterson, N. & N. Y. R. Co. v. Belleville,* 120 *N. J. L.* 1, (*Sup. Ct.* 1938), it was held that where State Aid for the construction of roads in a municipality was provided by statute (*R. S.* 27:15–7 prior to amendment of 1938), such statute would not contemplate the raising of any money by assessments on property benefited, but that the balance of the cost after State Aid was to be raised by general taxation, bonds, or contributions from liberally disposed persons. However, this case is no longer applicable under the statute as it now stands. The court in the *Paterson* case rests its decision upon the fact

that the statute, as then constituted, provided that the municipality might raise its share of the cost by a *tax levy*, by *borrowing money*, or by *accepting contributions*. Because of the specific inclusion of these methods of raising monies to pay the expense of the improvement over what would be paid by the State, and because assessments were not specifically provided for, the court there felt that the municipality could not use the assessing power to raise such funds. The court further stated that the clear intent of the statute seemed to be that the greater part of the cost, not exceeding 90%, was to be borne by the State Highway Fund, and that the municipality aided thereby is to finance the remainder out of tax levy, temporary bonds and contributions from liberally disposed persons. However, *R. S.* 27:15–7 was amended after the *Paterson* case and now reads as follows:

"The governing bodies of the municipalities may raise the funds necessary for the work contemplated by this chapter by taxation, by *assessment* in the manner provided for assessing local improvements under chapter 56 of the Title Municipalities and Counties (Par. 40.56–1 et seq.) or by temporary loans. * * *" (Emphasis added)

It is significant that the *Paterson* case was decided on March 21, 1938 and *N. J. S. A.* 27:15–7 as amended became effective on October 21, 1938. Thus, it may be seen that the *Paterson* case has been overruled by legislative enactment. Furthermore, since the improvement undertaken in the instant case is a "local improvement" under *N. J. S. A.* 40:56–1, and since this same statute authorizes the municipality to assess to pay the cost of such improvements, it would seem that the use of the assessing power was proper here. In this connection see *Hoglund v. Summit,* 28 *N. J.* 540 (1959).

In arriving at a solution to this problem, it must be remembered that not only is *R. S.* 27:15–1 *et seq.* involved, but also *R. S.* 40:56–1 *et seq.* (giving municipalities the power to assess for local improvements). *N. J. S. A.* 40:56–1 defines a local improvement as "one, the *cost* of which, or a portion thereof, may be assessed upon the lands in the vicinity

thereof benefited thereby." Is the "cost" the contract price or the eventual outlay the municipality must make? In *Borough of Sharpsville v. Randall*, 268 *Pa.* 585, 112 *A.* 112 (*Sup. Ct.* 1920), the court said:

"The cost does not mean the contract price, but it does mean the actual outlay the borough is required to make in the construction of the street." (at *p.* 113)

This seems to be the reasonable construction of the word "cost" and will be so adopted by this court, absent other factors.

## II.

However, there are also other factors present. The *New Jersey Constitution* of 1947, *Art.* VIII, § III, *par.* 3, states as follows:

"3. No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever."

This constitutional prohibition does not include aid to public corporations in the furtherance of a "public purpose." *Camden v. South Jersey Port Commission*, 4 *N. J.* 357 (1950). However, even if the purpose be public, it cannot be accomplished by means of aid to private corporations. See *Wilentz v. Hendrickson*, 133 *N. J. Eq.* 447 (*Ch.* 1943), affirmed 135 *N. J. Eq.* 244 (*E. & A.* 1944). Whether the purpose is a public one, therefore, is no longer the sole test as to the proper use of the State's credit. Such a purpose may not be served in one particular way. However important, however useful the objects designed by the legislature, they may not be accomplished by a gift or a loan of the credit to an individual or a corporation. It will not do to say that the character of the act is to be judged by its main object—that because the purpose is public, the means adopted can not be called a gift or a loan. *Wilentz v. Hendrickson, supra*, 133 *N. J. Eq.*, at *page* 480.

■ In the instant case the reduction of the plaintiff's assessment by means of a credit based upon the amount of State Aid would constitute a gift to a private corporation in violation of *N. J. Constitution Art.* VIII, § III, *par. 3, supra.* It makes no difference whether the reduction be accomplished by direct pecuniary aid or by release from a pecuniary burden. Both methods are prohibited. *In re Voorhees Estate,* 123 *N. J. Eq.* 142, 146 *(Prerog.* 1938); *Jersey City v. North Jersey St. Ry. Co.,* 78 *N. J. L.* 72, 74 *(Sup. Ct.* 1909).

■ State Aid may be used by a municipality for improvements which confer a general benefit, or to reduce or pay in full the municipality's share of an assessment based upon property which it owns. But if assessments have been made because of the special benefit conferred upon adjacent property owners by reason of the improvement, these assessments cannot be reduced by the amount of State Aid received. In a situation where the municipality owns no property adjacent to the improved area and where the assessments made upon private, adjacent property owners cover the full cost of the improvements, State Aid could not be used to reduce the assessments made. This follows from what has been said above. In such a case, if State Aid had been given for the project and not expended for the purpose for which it was given, *N. J. S. A.* 27:15–1.8 provides that such sum given and not expended should be deducted from the amount set aside for the municipality in the following year. In effect this amount is a return to the State of the grant not expended.

The statutes, *R. S.* 27:15–1 *et seq.,* provide for State Aid to municipalities and do not provide for a reduction in assessment to an abutting property owner as the result of State Aid received. These statutes are silent as to this. The court must interpret and enforce the legislative will as written and not according to some supposed unexpressed intention, and the court is not at liberty to indulge in presumptions that the Legislature intended something more than what it actually wrote into law. *In re Anonymous,* 32 *N. J. Super.* 599 *(Ch. Div.* 1954); *Dacunzo v. Edgye,* 19 *N. J.* 443 (1955).

*N. J. S. A.* 40:56-1, *supra,* does provide for a credit to be made on each assessment providing a grant is made to a municipality by the Federal Government[1], but this part of the statute is inapplicable because we are not concerned with Federal Aid, but only State Aid in the present case. This would seem to indicate that the Legislature in enacting *R. S.* 27:15-1 *et seq.* did not intend to provide for a credit on each assessment where State Aid was involved. See *Asbury Park Press, Inc. v. City of Asbury Park,* 19 *N. J.* 183 (1955).

Furthermore, there is a presumption of the validity of municipal action and there is the compulsory admonition of our *N. J. Constitution (Art.* IV, § VII, *par.* 11), which states that the provisions thereof and of any law concerning municipal corporations "shall be liberally construed in their favor." *Ward v. Montgomery Township,* 28 *N. J.* 529, 539 (1959); *Moyant v. Paramus,* 30 *N. J.* 528, 534 (1959).

### III.

In an effort to establish a uniform practice in other municipalities throughout the State with reference to this question, and at the suggestion of the court, counsel for the plaintiff produced two witnesses. Paul E. Davis, senior engineer in Middlesex and Union Counties for the Division of State Aid of the State Highway Department, testified that the Department has no hard-and-fast rule as to how a municipality could or should assess, but said that the municipality cannot assess for any of the state money and cannot recapture any state money spent on the job by assessment. However, this testimony was not very specific, and on cross-examination he said that the act regulating State Aid to municipalities does not give any authority to question the assessment and that he did not impose any condition that there should not be any assessment when he sent the State Aid money to the city,

---

[1] *N. J. Constitution, Art.* VIII, § III, *par.* 3, *supra,* does not prohibit this since this is Federal Aid and is not a donation or appropriation of money by the State.

and that his statement that the municipality cannot assess was not based on a written rule but on a verbal rule.

The other witness was Charles W. Beagle, a licensed professional engineer and land surveyor and engineer for the Township of Woodbridge. He testified that he had been employed as borough engineer and director of public works in South Plainfield, N. J.; that he had been borough engineer of New Providence, N. J. and that in these capacities he had experience in street improvements and general capital improvements every year since 1955; that he has worked closely with the municipal assessors and that he had considerable experience involving street improvements made with state grants in aid; that the assessments were made for the local government's share in the cost of construction, and this has been the practice in the three communities in which he worked and in 200 other communities throughout the State. He said that he had acquired the latter information through contact and discussion with members as president of the New Jersey Society of Municipal Engineers. However, this information was based on "hearsay" and it did not tend to establish a uniform policy in all of the municipalities of the State, and on cross-examination he testified that he was not an assessor and did not, in performing his duties have the responsibility to assess.

Therefore, it is the opinion of this court that plaintiff has failed to sustain the burden of proof and a judgment of no cause of action will be entered.

A judgment in accordance with this opinion, duly consented to as to form or settled upon notice pursuant to *R. R.* 4:55-1, will be submitted to the court.